Case: 1:14-mj-00422
Assigned To : Magistrate Judge John M. Facciola
Assign. Date : 6/11/2014
Description: Criminal Complaint Removal

**FILED**

JUN 1 1 2014

Clerk, U.S. District and Bankruptcy Courts

# THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF VIRGINIA

| UNITED STATES OF AMERICA, | |
|---|---|
| Vs. | CASE NO. 7:14mj44 |
| Ater George ANYUON<br>Joseph ELBINO<br>Abuk KUAC | COMPLAINT for VIOLATION of Title 18, USC §371 Conspiracy to violate 1543 (False Passport) |

Before the Honorable Robert S. Ballou, United States Magistrate Judge, United States District Court, Western District of Virginia.

## COUNT ONE
### (Conspiracy)

1. At various times during the time period of on or about March 2014 until the present, in Roanoke, Virginia, in the Western District of Virginia and elsewhere, defendants George Ater ANYUON, Joseph ELBINO, and Abuk KUAC (the SUBJECTS) conspired, agreed with each other and acted with others known and unknown to knowingly and willfully, with the intent to furnish to another for use a falsely made passport in violation of Title 18 United States Code (U.S.C) § 1543, forgery or false use of passport

2. All in violation of Title 18, U.S.C. § 371, Conspiracy, which invokes provisions found within Title 18, U.S.C. §§ 1543, Forgery or False Use of a Passport.

## INTRODUCTION

3. I, Special Agent Hunter Durham, being duly sworn do state that I make this affidavit in support of an application in support of a criminal complaint pertaining to the arrests of persons named herein. The persons charged in this criminal complaint are described in greater particularity within this narrative affidavit and in Attachment A of this application.

4. I am a Special Agent with the U.S. Department of Homeland Security (DHS), Office of Homeland Security Investigations (HSI), currently assigned to the Office of the Special Agent in Charge in Washington D.C. I began my career as a member of the United States Military uniformed services where I served as a Non-Commissioned and Commissioned Officer for 10 years. I have been awarded academic degrees of Bachelor of Arts and Master of Arts concerning the field of Political Science. I have been employed as a Special Agent in federal law enforcement since 2006.

5. The facts set forth in this affidavit are based on my investigation, experience, observations, training, professional research, and background reviews of information

1

obtained through case work, public sources, other law enforcement agencies, other officers, public records, and witnesses.

6. The facts set forth within this affidavit are provided for the limited purpose of establishing probable cause to believe that the SUBJECTS conspired and acted with each other and others to violate Title 18 United States Code § 371, conspiracy, invoking Title 18 United States Code § 1543, forgery or false use of passports. To wit, there is probable cause to believe that the subjects conspired to obtain and provide a false passport to another person for use. This affidavit does not contain all of the details and facts known to me or that have been compiled as a result of this investigation.

## RELEVANT ENTITIES

11. **Cooperating Defendant One (CD1)** is not a United States (US) Citizen and has been present in the continental US as a refugee resident since 2006. CD1 advised that CD1's motivation for providing information to the US Government (USG) is to attempt to receive cooperation consideration related to a pending criminal charge.

12. **George Ater ANYUON, AkA "AT"** (B/M; Alien: 078765635; DOB: 09/ /1978; SSN: ; FBI: 245581RB3) is believed to be a convicted felon based on a review of NCIC law enforcement records. ANYUON entered the United States in 1999 as a NATION1 Refugee at the New York City Port of Entry and maintains that status as of the date of this narrative. ANYUON is identified as a conspirator in this investigation.

13. **Joseph ELBINO** (B/M; Alien 028221767; DOB: 03 1981; SSN: FBI: 474758LC0) is believed to have a criminal history with indications of charges relating to misdemeanor assault, brandishing of firearm, and a misdemeanor obstruction of justice conviction primarily in Virginia from 2006 until the present. ELBINO entered the United States in 1999 as a NATION1 refugee at the New York City Port of Entry and became a Naturalized United States Citizen on June 6, 2008 (Certificate 30583836.) ANYUON is identified as a conspirator in this investigation.

14. **Abuk Piotem KUAC** (AkA: ABUK; B/F; DOB: 06/ /1985; SSN: ') is believed to have a criminal history with indications of charges related to assault in New York state. KUAC is identified by this investigation as the girlfriend of ANYUON and a conspirator.

15. **Marlen Ramadan TABOOR** (B/F; Alien 078804868; DOB: 01 ./1988; SSN; ; FBI: 301429AD8) is wanted by the Commonwealth of Virginia and United States Marshal's Service (USMS) under NCIC warrant W041163587 for crimes related to the murder of TABOOR's five month old child in 2009. TABOOR is related to this this investigation as a fugitive from justice. TABOOR is alleged to have fled the United States to avoid prosecution after being charged with murder in Roanoke City, Virginia with the assistance of ANYUON and ELBINO.

2

16. **NATION1 and NATION2** are independent nation states or political components of a nation-state, which are represented by diplomatic missions to the United States. **FORNMIS1 and FORNMIS2** are the actual foreign diplomatic missions or embassies representing NATION1 and NATION2, which are believed located within the National Capital Region in Washington, D.C. It is alleged that an unknown person or persons with association to the FORNMIS1 and FORNMIS2 also conspire to produce and provide false NATION1 and/or NATION2 passports under false or fraudulent pretenses.

## BACKGROUND

17. The Department of Homeland Security, Office of Homeland Security Investigations (HSI), the United States Department of State's Diplomatic Security Service (DSS), the Federal Bureau of Investigation (FBI), and the United States Marshal's Service (USMS) are investigating entities and individuals pertaining to an alleged conspiracy to produce, provide, and utilize false passports.

18. In April of 2014, law enforcement became aware of an alleged conspiracy to obtain false passports, which are available or obtained from foreign diplomatic missions to the United States, which are located in the Washington D.C. National Capital Region area.

## FACTS AND CIRCUMSTANCES

19. On or about April 16, 2014, CD1 provided information pertaining to this investigation, which was witnessed by your affiant and other law enforcement officers. CD1 identified ANYUON and ELBINO as local friends of CD1's and fellow nationals of NATION1, who reside in Roanoke, Virginia. CD1 also identified a person known as Marlen TABOOR who is a national of NATION2. CD1 alleged that TABOOR fled the United States in order to avoid prosecution related to a charge of murder in the Commonwealth of Virginia during 2009. CD1 advised that TABOOR successfully departed the United States by evading law enforcement and is now residing in NATION2. CD1 alleged that CD1 has engaged in first person conversations with ANYUON and ELBINO during April and May of 2014, wherein the conspirators acknowledge aiding and facilitating TABOOR's efforts to evade law enforcement and depart the United States. CD1 alleges that the conspirators advised CD1 that part of the scheme involved the procurement of a NATION1 or NATION2 passport made and provided to TABOOR under a false identity, which was issued by an unknown conspirator with access and association to FORNMIS1 or FORNMIS2. Your affiant has confirmed that TABOOR was charged with murder in the City of Roanoke, Virginia, absconded from law enforcement, and her whereabouts are currently unknown.

20. CD1 described recent criminal charges, which were levied against CD1 by the Commonwealth of Virginia. CD1 advised that ELBINO and ANYUON became aware of the criminal charges as a result of recent conversations after CD1 was released on a bond. CD1 advised your affiant that ELBINO and ANYUON solicited to aid CD1 in fleeing the

3

potential prosecution of CD1's case. CD1 alleged that the conspirators made advisements to CD1 that they would conduct the following activities in support of CD1's evasion:

- A. Drive CD1 to the Washington D.C. area for the purpose of visiting FORNMIS.

- B. At the FORNMIS the conspirators would meet with an unknown employee or associate of the FORNMIS, who they allege is related to KUAC.

- C. The unknown associate at the FORNMIS would provide CD1 with a NATION1 or NATION2 passport, which would be issued in a false identity and be paid approximately $1,000.00 in United States currency.

- D. The conspirators and unknown FORNMIS associate would conduct this activity willfully and knowingly to provide CD1 with a foreign passport in a false identity.

- E. ELBINO and ANYUON would take over CD1's business once CD1 left the United States and they will receive a portion or percentage of the business earnings.

21. On April 25, 2014, CD1 participated in a law enforcement operation at 4847 Rutgers Road, Apartment 100, Roanoke, Virginia, which is known to be the residence of ANYUON, KUAC, and ELBINO. The operation involved a controlled, monitored, and recorded meeting between CD1 and ANYUON. The purpose of CD1's meeting with ANYUON was to discuss the conspiracy to obtain a false passport. During the operation, law enforcement observed a white Lincoln Town-Car parked in front of the residence bearing New York registration GNL-9908, which is registered to KUAC. CD1 was present within the residence for approximately 12 minutes.

22. After the meeting, a de-brief was conducted by Agent Durham with CD1, which focused on the conversation within the residence. CD1 identified "AT" (ANYUON) as a person he encountered and had a discussion in the Arabic language with. CD1 also identified AT's girlfriend, Abuk (KUAC) as present. CD1 summarized the conversation by stating CD1 and AT discussed the following:

- A. CD1's serious criminal case and implications;

- B. CD1's desire to seek assistance from AT in fleeing prosecution by departing the United States;

- C. CD1 will accompany AT to FORNMIS to obtain a NATION1 or NATION2 passport;

4

    D.    The passport will be issued to CD1 under a false identity, which is not CD1's true identity;

    E.    AT and CD1 will obtain CD1's passport photos from a CVS pharmacy near the FORNMIS;

    F.    CD1 will pay $1,000.00 to a FORNMIS employee for the passport;

    G.    CD1 will need to bring approximately $1,500.00 for airline tickets.

23.    On May 20, 2014, your affiant reviewed translation notes, which are associated with a monitored and recorded meeting that occurred on April 25, 2014 with ANYUON at ANYUON's residence. The following summary notes were obtained from an employee of the United States Government, who is identified as a certified Arabic translator (USG Translator) with special knowledge of the foreign language associated with the SUBJECTS:

    A.    CD1 updates ANYUON about a police incident and a call from CD1's lawyer. CD1 and advises ANYUON "I need to go."

    B.    CD1 inquires about a passport by asking ANYUON, "Will it be in someone else's name?" ANYUON replies in the affirmative.

    C.    CD1 inquires about the cost of the passport. ANYUON advises the passport will cost "one thousand dollars." ANYUON adds, "Yes because last time she got it for like seven hundred or something." CD1 states, "Oh to Marlen."

24.    On April 27, 2014, CD1 participated in a law enforcement operation at CD1's local business in Roanoke, Virginia. The operation involved a controlled, monitored, and recorded meeting between CD1, ELBINO, and ANYUON. The purpose of CD1's meeting with ANYUON was to discuss the conspiracy to flee prosecution in the United States, which includes obtaining a fraudulent passport. Prior to and during the operation, law enforcement observed two black males and a black female within a white Lincoln Town-Car parked in front of the residence at Rutgers Road in Roanoke bearing New York registration GNL-9908. These individuals were observed by law enforcement traveling from Rutgers Road to Shenandoah Avenue. The controlled meeting lasted from approximately 4:15 pm until 5:21 pm.

25.    After the meeting, a de-brief was held by Agent Durham with CD1, which focused on the conversation within the residence. CD1 identified "AT" (ANYUON), ELBINO, and KUAC as persons who CD1 encountered at the location. CD1 advised that a conversation in English took place between CD1, ELBINO, ANYUON, and employee named "Bob" at the business. The conversation pertained to a business arrangement between the parties, which would initiate upon CD1's departure from the United States. CD1, ELBINO, and ANYUON also participated in a private conversation in Arabic

pertaining to the alleged scheme to provide a false passport. CD1 summarized the conversation by stating AT and ELBINO discussed a scheme to aid CD1 in fleeing prosecution of a criminal matter and obtaining a false passport from FORNMIS under false pretenses.

26. On May 20, 2014, your affiant reviewed translation notes, which are associated with monitored and recorded meeting that occurred on April 27, 2014 with ANYUON and ELBINO in Roanoke, Virginia. The summary notes are obtained by USG Translator:

    A. CD1 advises that he cannot be locked up in jail for many years.

    B. ANYUON or ELBINO (undeterminable) advises CD1 that CD1 should put money down as a guarantee to cover the "airline ticket." Airline options are discussed to a specific foreign location.

    C. ANYUON or ELBINO (undeterminable) advises CD1 that CD1 should avoid planning a trip to the Embassy on Friday due to low staffing levels due to holy day religious activities.

27. On April 29, 2014, CD1 telephoned your affiant to report an encounter with ELBINO. According to CD1, ELBINO visited CD1 at a CD1's place of business within Roanoke City, Virginia. While present, ELBINO requested to utilize CD1's telephone in order to telephone EBLINO's contact at the FORNMIS, which CD1 agreed to. CD1 advised ELBINO took possession of CD1's cellular telephone and walked away from CD1 in order to attempt to use the telephone in private. After ELBINO utilized the telephone, CD1 preserved the call log, which was observed and photographed by your affiant. Your affiant observed a telephone call from CD1's telephone to telephone number **(202) Phone 1 (REDACTED)** during the period alleged by CD1. Public records identify this telephone number as associated with the embassy of a foreign government.

28. On May 19, 2014, your affiant received call detail records from Sprint Mobile Communications, which are associated with CD1's phone use. The records identify call detail records for April 29, 2014. The records identify telephone calls from CD1's cellular telephone including calls to **(202) Phone 1** and **(202) Phone 2**. Three calls were placed to **(202) Phone 1** for durations of 134 seconds, 129 seconds, and 2 seconds respectively. One call was placed to **(202) Phone 2** for a duration of 50 seconds. Both numbers return as associated with foreign embassies, which belong to sovereign but intimately and geographically related nations.

29. On May 29, 2014, CD1 participated in a law enforcement operation at his local business in Roanoke, Virginia. The operation involved a controlled, monitored, and recorded meeting between CD1, ELBINO, and ANYUON. The purpose of CD1's meeting with ANYUON was to discuss the conspiracy to flee prosecution in the United States, which includes obtaining a fraudulent passport. Prior to and during the operation, your affiant observed two black males and a black female within a white Lincoln Town-Car parked at the business bearing New York registration GNL-9908. The two males

6

were also observed by your affiant seated in CD1's automobile with CD1 in the vicinity of the business. The meeting lasted from approximately 3:00 pm until 4:00 pm.

30. After the meeting, a de-brief was held by Agent Durham with CD1, which focused on the conversation within CD1's vehicle. Your affiant instructed CD1 to request ELBINO and ANYUON that CD1 would be prepared to conduct the trip to Washington D.C. on Tuesday June, 10, 2014 and would like the false passport under the identity "Jamal Ahmed" with a date of birth on April 1, 1977. CD1 identified "AT" (ANYUON), ELBINO, and KUAC as persons who CD1 encountered at the location but identified only ELBINO and ANYUON as persons who engaged in substantive conversation about the scheme. CD1 advised that a conversation in Arabic (with incidental English) took place between CD1, ELBINO, and ANYUON. CD1 summarized the conversation by stating AT and ELBINO discussed a scheme to aid CD1 in fleeing prosecution of a criminal matter and obtaining a false passport from FORNMIS under false pretenses. Your affiant listened to the recorded conversation and observed the following statements made in English:

- A. CD1 advises, "I got already the thousand dollars for the passport.

- B. CD1 advises, "Tuesday the 10." ANYUON or ELBINO (undeterminable) responds: "yea."

- C. CD1 and ELBINO utilize the word "passport" on several occasions in succession during the 25th minute of the recording.

- D. At minute 25:46, ANYUON or ELBINO advise, "We got to go get the thing [passport] from the [LOCATION REDACTED (FORNMIS)]."

- E. At minute 26:15, CD1 utilizes the word "embassy."

- F. At minute 27:17, ANYUON uses the words "Walgreen" and "CVS."

- G. At minute 27:36, CD1 utilizes the words "Jamal Ahmed."

29. On June 8, your affiant reviewed translation notes, which are associated with monitored and recorded meeting that occurred on May 29, 2014 with ANYUON and ELBINO in Roanoke, Virginia. The summary notes are obtained by USG Translator:

- A. CD1 advises ELBINO and ANYUON that he would like to depart the United States on June 10, 2014 because of his current criminal issues.

- B. CD1 discusses ELBINO and ANYUON obtaining a foreign passport from a FORNMIS. During the discussion ELBINO offers CD1 an alternate solution by offering CD1 ELBINO's American passport. ELBINO advises CD1 that ELBINO will give CD1 the American passport and then report it lost after CD1 reaches Ethiopia.

7

    C.    ANYUON advises CD1 that ELBINO and ANYUON will obtain a foreign passport for CD1 under the false identity Jamal Ahmad, which was the identity requested by CD1.

    D.    ANYUON, ELBINO, and CD1 agree they will travel to obtain the passport; that CD1 will remain in the vehicle while ELBINO and ANYUON obtain the passport; and that ANYUON and ELBINO will receive the title to CD1's car after the event is completed.

    E.    ANYUON identifies Tarik LNU as the person at the FORNMIS who will supply the passport and receive $1,000.00 in currency.

    F.    At the conclusion they agree to travel to FORNMIS on Tuesday June 10, 2014 at 6:00 am in order to conduct these transactions.

29.    On June 10, 2014, CD1 participated in a law enforcement operation, which began in Roanoke, Virginia and concluded in Washington D.C. The operation involved controlled, monitored, and recorded activities between CD1, ELBINO, ANYUON, and KUAC. The purpose of CD1's activities was to execute a previously established plan between the SUBJECTS, which involved obtaining a false or fraudulently issued foreign passport from a FORNMIS. Prior to and during the operation, your affiant observed three black males and a black female within CD1's Cadillac Deville bearing Virginia Registration WNW-4560. The SUBJECTS were also observed by your affiant within CD1's automobile and in other locations within Virginia and Washington D.C. from approximately 6:00 am until 4:30 pm. During this activity, your affiant observed audio conversations between the SUBJECTS with the assistance of an Arabic interpreter. The following are summaries of incidents occurring during June 10, 2104 and constitute overt acts related to this conspiracy. The information includes observations of real-time audio obtained from electronic surveillance equipment, which was monitored with the assistance of an Arabic speaker:

    A.    The SUBJECTS traveled from Roanoke, Virginia directly to FORNMIS1, which is located in Washington, D.C. Prior to conducting the travel, it was indicated KUAC was needed to travel with the group for the purpose of having her drive CD1' vehicle during the return trip to Roanoke. It was planned that KUAC would drive CD1's vehicle back because CD1 was expected to flee the United States and neither ELBINO nor ANYUON possesses a valid driver's license.

    B.    At approximately 11:12 am, your affiant listened to real-time audio where it was observed that CD1 provided ELBINO with $1,500.00 in currency for the purpose of paying an employee within FORNMIS1 for a NATION1 passport. During this portion of the event your affiant also observed discussion using the term "Jamal," which is part of the pre-agreed upon false identity identified by this investigation for CD1's

8

foreign passport. It is also reported by CD1 that CD1 provided ELBINO with CD1's passport photos. ELBINO and ANYUON exited the vehicle together and were observed walking toward the embassy.

C. At approximately 11:36 pm, ELBINO and ANYUON entered FORNMIS1 and were present until about 12:30 pm. During their visit ELBINO and ANYUON entered and exited FORNMIS1 several times and were observed meeting with an adult black male wearing a grey suit, who also entered and exited FORNMIS1 several times. ELBINO, ANYUON, and the unknown male were observed by law enforcement handling objects, which were similar in appearance and believed to be foreign passports. ELBINO, ANYUON, and the unknown male were also observed arguing moments later in the immediate vicinity of FORNMIS1.

D. At approximately 12:25 pm, ELBINO and ANYUON departed FORNMIS1 and returned to CD1's vehicle.

E. At approximately 1:45 pm, the SUBJECTS arrived at FORNMIS2, which is located in Washington, D.C and remained in the vicinity until approximately 4:30 pm. ELBINO and ANYUON exited the vehicle and entered FORNMIS2 several times for the purpose of obtaining a passport. ELBINO was also observed by law enforcement entering the CVS on M Street in Georgetown. After ELBINO's arrest a receipt for a CVS money order was identified on ELBINO's person in the amount of $25.00, which was dated June 10, 2014. CD1 advised that ELBINO obtained the money order in order to pay the official passport charge.

F. During the period the SUBJECTS were present at FORNMIS2, your affiant listened to real-time audio where it was observed that ELBINO, ANYUON, and KUAC attempted to convince CD1 to enter FORNMIS2 through intense and degrading argument directed at CD1.

F. Beginning at approximately 2:10 pm, your affiant listened to real time audio where KUAC was observed making statements such as "Why didn't you tell me"; "I will take you to the embassy"; "AT ruined it [the first attempt at FORNMIS1]"; and "I need money."

F. At approximately 2:30 pm, law enforcement observed an unknown black male meet with the SUBJECTS at CD1's vehicle, which was parked in the immediate vicinity of FORNMIS2. At approximately the same time, your affiant listened to real time audio where an unknown male was observed discussing obtaining a passport with CD1.

### CONCLUSION

9

31. Based on the aforementioned factual information, your affiant respectfully submits that there is probable cause to believe that ANYUON, ELBINO, and KUAC have engaged in a scheme to violate Title 18 U.S.C. § 371, which invokes Title 18 U.S.C. 1543. This conspiracy includes circumstances, planning and acts, which have occurred in the Western District of Virginia. As a result of the scheme, ANYUON, ELBINO, and KUAC have conspired to furnish CD1 a false passport or instrument and made overt acts in the furtherance of this scheme including conducting meetings and events occurring on April 25, 2014, April 27, 2014, and May 29, 2014; and June 10, 2014. This includes placing telephone calls from CD1's cellular telephone to embassies of foreign governments; traveling to Washington D.C. with CD1 on June 10, 2014; utilizing CD1's passport photos, and attempting to approach the embassy of a foreign government for the purpose of purchasing a fraudulent passport for CD1 in the name of Jamal Ahmed.

32. The U.S. District Court for the Western District of Virginia is the court of competent jurisdiction authorized to examine this application, which applies to a conspiracy and acts within the federal Western District of Virginia.

Respectfully submitted,

Hunter R. Durham
Special Agent
Homeland Security Investigations
Roanoke, Virginia

Subscribed and sworn to before me on the 11 day of June, 2014

HONORABLE ROBERT S. BALLOU
UNITED STATES MAGISTRATE JUDGE

A TRUE COPY, TESTE:
JULIA C. DUDLEY, CLERK
BY: _____ DEPUTY CLERK